9 Murphy v. Northside Independent School District, Mr. Shaquille. Good morning, Your Honor. Forgive my haste. Thank you for the opportunity to be here today to present these claims on behalf of Chloe Murphy against the Northside Independent School District in San Antonio, Texas. She alleges that she was a victim of discrimination based upon sex pursuant to Title IX of the Educational Acts of 1972. She also has alleged that the school district institutionally failed to provide training to staff a due process claim under the Fourteenth Amendment. We are here on a 12B6 motion to dismiss, asking whether or not the original pleadings were plausible, meaning that the claims presented and the by Chloe and the reasonable inferences that flowed from such facts gave rise to a plausible claim under Title IX or under the due process clause. The district court said no, and we believe the district judge erred in doing so. Part of it had to do, maybe even starting off with the characterization of the case as we read the judge's order. He wrote heavily about how the case was about frog jumps or the fact that Chloe was punished, causing her to develop this rambodenialosis, what we call rambo. We need to point out that, of course, the plaintiff always has the right to characterize cases how he or she feels fit, and those inferences and that characterization in order to the benefit of the appellant in this case. This case may be about frog jumps, but it's more than about frog jumps. This case may be about injuries, but it's a lot more than injuries. It's about institutional failure to provide girls and boys equal access to accommodations through the budgeting process of the school district. In Peterson versus LSU, this Fifth Circuit provided a number of standards and elements that the courts need to look to to be able to determine whether or not there has been discrimination based upon sex or gender during the process of how girls are provided services. Mr. Shaquille, with due respect, I do not understand the connection between your claim of disparate funding for the boys and girls sports and what happened to this poor young lady. Thank you, Your Honor. Well, once again, the funding has various implications. The implications were, for instance, They hired an unqualified coach. Exactly. Now, you didn't allege that, though. I just made that up. Yeah. They hired an unqualified coach. She had a history of not only being unqualified, but actually injuring other students, which she admitted later on when she visited Chloe at the hospital. She made them do a number of exercises and frog jumps without having had the students work up or practice such an activity. It was an ill regime, particularly ill-suited for girls. As we know, cheer is the most dangerous practice for female students, for any students after football. It was done in excruciating heat. It was done without water. It was done without water breaks. It was done as a punishment, which is also a failure of state law. So these various effects that occurred to Chloe, ultimately leading in her injury, have to be traced back to the school district's institutional failure to provide boys and girls equal aggregate funding for such services. If we go into Peterson, Peterson lays out certain inferences or presumptions, even rebuttable presumptions, but presumptions that the effects of disaggregate funding for boys as to girls have something we need to look at when we analyze cases like this. Those things have to do with practice. They have to do with staff. They have to do with training. They have to do with the types of very, very things that have occurred in this case. So the injury, Your Honor, arguably a case like this could be tried without the injury. Still, the injury under Peterson is a failure to be treated fairly. The injury under Peterson would be the failure to be given water during practice or water breaks or be given exercises that are ill-suited. Those are the injuries under Peterson, under Title IX. The reason we're here in court is . . . How does the school board's policy against such forms of punishment play into the analysis? That's a good question. That part of the issue, Your Honor, actually goes to why the judge erred, because the judge talked about how our allegations basically had to do with discrepancies between football, a boy's sport, and cheer, a girl's sport. The question you ask has to do more with overall training that has nothing at all to do with sex. So there was a litany of issues that occurred in this case. The policy, for instance, that emanates from state law that you can't use exercise as a punishment, a policy that also emanates from state law that you can't use hazardous exercises that tend to injure people. So those things had nothing at all to do with the discrepancy between football and cheer. Those things have to do more with the failure to train analysis, Your Honor. Let me just ask a question. If this had happened to a boy, would you be filing suit? No. I can't see how. I mean, almost every year we hear about some young men dropping with serious heat stroke during these practices in the heat of the day. Well, I wouldn't be honest with you if I didn't tell you, Your Honor, I didn't have cases like that, too. So in certain situations there could be that type of a case, but it wouldn't be a civil rights claim under Title IX, as an example. If, in fact, there was any such claim that child would have, it would have to be under 1983. And as we both know, those are very difficult in this kind of universe. Sad they are. But we're here on a statutory claim. In fact, one of the reasons that in my own practice I tend to practice on the statutory claims, quite frankly, because the constitutional claims are so difficult. Very, very often I drop the constitutional claims after some time because they are so difficult. What's interesting in this case, I purposely kept them because they're so apropos. Because even if the Title IX claim fails under the court's analysis, the failure to train claim, I think, should survive. Because, once again, if you go back to the Texas legislature and the statutes that have been developed, propounded by the legislature, and then put into school board policy, all those things have to occur for students regardless if they're male or female. And here we have a litany of failures in this instance. That's your 1983 claim? The 1983 claims are failure to train claim, Your Honor. Right. And normally those kind of claims, of course, require multiple types of incidents before, let's say, a school board is put on notice. But the issue here is kind of twofold under the LaFalle v. Houston ISD case is that if we have certain issues that are so ripe for constitutional abuse . . . I was going to ask you about that. Would you have to show deliberate indifference in order to make your failure to train claim? I wrestled with that, Your Honor. There's a little bit of a distinction in there that I've wrestled with. Under the LSU v. Peterson case, that type of a claim requires intentional discrimination by the school board. The type of claim that I think deals a little bit more with the failure to train has to do with not only the intentional discrimination flipside of that coin, but the deliberate indifference of the school board in failing to have staff trained. So I think those are distinctions in those two types of claims that have to be developed. So the answer is yes. So you don't have the evidence right now? We don't what? You don't have the evidence right now. Well, that's another good segue. I'm under a 12 v. 6 motion, so there is no evidence yet, Your Honor. In fact, most of the cases that have been relied upon . . . Well, you must . . . Did you plead that, allege that there were previous instances of no water and lack of training and so forth? No, we did not plead that, Your Honor. What we relied upon was that a failure to train can survive when the issue is so obvious to the, in this case, the school board, that the failure to train is needed. So here we have statutory directives. We have school board policies that have already put them on notice of the need to train in these areas. So while normally failure to train does require a number of instances to put a school board on notice, here the school board is admittedly on notice by their very own policies and procedures. I wanted to talk a little bit about the Texas Legislature. After the incident, I'll be it, but the Texas Legislature is making it very clear for courts to look at differences between boys' and girls' sports and not use resources for boys' sports and not for girls' sports. It came under the issue of transgender sports and whether boys who wanted to practice or play in girls' sports could do so, and the Texas Legislature said no. And part of the issue is that boys and girls have different genetic make-ups, boys and girls have different metabolic make-ups, they have different emotional make-ups, they have various differences that need to be respected by coaches and school boards all over the state of Texas and, of course, Mississippi and Louisiana. And while everybody under Title IX will tell you that they believe boys and girls should be given equal access and equal money for services, this is a perfect case to show us, and we asked the court to show all the states that are part of the Fifth Circuit, that we just can't give lip service to boys and girls being equal and getting equal services. They have to fund it, it has to be enforced. I'm not aware of any other case, and there may be, where school districts in Texas are enforced to provide equal services to boys and girls. And I'm here today to ask you to overturn the decision by the district judge, remand it back to the district judge and let us litigate that issue. Do you have anything to say about Moorby-Willis Independent School District, where this court held that an incident that caused rhabdomyolysis in a high school student was not actionable under 1983? Ma'am, we had the Policino case before you. The what? The Policino case dealt with Rambo. You mentioned the . . . Moorby-Willis Independent, 233 F. 3rd, 871 Fifth Circuit, 2000. I have that in my brief. I'll answer that when I get back on rebuttal, Your Honor, just to be fair for the minute. Okay. Thank you very much. All right. Thank you. Ms. Payne. Good morning. May it please the Court, Katie Payne on behalf of Northside ISD. Ms. Murphy's Title IX and Section 1983 failure to train claims both fail for the same reason. She cannot allege facts showing that her injury is attributable to an official policy of the a single allegedly negligent decision by a lower-level employee. You're calling this allegedly negligent? Yes, ma'am, just because we are at the 12B6 posture and I have to take all of their well-pleaded facts as true. I can't challenge them, but I don't want to agree with them either. So I'll start with the Title IX claim. This court has been clear that there are only two policy images. The first is that an institution has to have an official policy of discrimination or it can show, the plaintiff can show that an inappropriate person had actual knowledge of discrimination and responded with deliberate indifference, and those come from the Gebster v. Lago Vista Supreme Court case. Under either of those avenues, schools can only be liable for intentional discrimination, and that's important because it leads us to two problems with Ms. Murphy's case. The first is that you cannot premise a Title IX claim upon disparate impact theories, nor can you premise your Title IX claim upon violation of the Title IX regulations. In Plaintiff's brief, she explicitly asks this court to go forward with her claim for violation of the Title IX regulations. I believe she cites the Peterson case along with several out-of-circuit cases for that proposition. The problem with that is the Peterson case predates Alexander v. Sandoval, which is a United States Supreme Court case from 2000, which held that you cannot have a private right of action for violation of Title IX regulations, nor can you have the private right of action for disparate impact. This court very sort of clearly and that's at 826 Federal Appendix 359. It's a purcurium unpublished decision, but I do think it's helpful to this case because the facts are almost identical. In that case, an 11-year-old girl was part of a class that was ordered to do ceiling jumps, an excessive amount, and she developed rhabdomyolysis as a result. This case applied Alexander v. Sandoval for at least two propositions. You can't premise your Title IX claim on violation of Title IX regulations. It has to be for discrimination under the statute, and that means you've got to have an official policy of discrimination or notice to an appropriate person and deliberate difference in response. The second thing was that you cannot proceed with a Title IX claim that's disparate impact, and that's very similar to the facts in this case. We have a facially neutral directive, right? You guys relate to practice. We're all going to do frog jumps. What we have is an unfortunate, tragic disparate impact result for one student. If you look at the allegations in Ms. Murphy's complaint, while she characterizes it as an unequal treatment claim under Title IX, I would assert that, like in the Polosino case, this Court recognized that it's actually a disparate impact claim. I'm looking at your brief. Is that cited in your brief? Yes, ma'am. Alexander v. Sandoval is. The Polosino case is not because it was unpublished. That's what I mean, Polosino. We're familiar with Alexander. Yes. It's not because it's— Give me this cite again. Yes, ma'am. Yes, Your Honor. 826 Federal Appendix 359. That's a per curiam decision. I'm confident Plaintiff's Counsel can address this because he represented the plaintiff in that case as well. Okay. To the extent that there is a Title IX claim for unequal treatment in the first record, which is not a settled question, the Peterson case from 2000, which again predates Alexander, referenced in a footnote that that might be an option. I think it's more helpful to look at the Arsinoe case from 2018 that Plaintiff also relies on in her brief. It talks about the fact that that type of unequal treatment claim, whether or not it exists, is unsettled in the Fifth Circuit, and also whether or not you can use the McDonnell-Douglas circumstantial evidence prima facie case imported from Title VII is also unclear. Instead, in that case, we had a cheerleader who was removed from the cheerleading squad for our disciplinary measures, and she claimed that the cheerleading policy was more stringent than the handbook applied to all students. The Arsinoe court looked at that situation, said you know what? It's a facially neutral policy. It applies to all cheerleaders. It doesn't apply to male cheerleaders or female cheerleaders differently. Those are the appropriate comparators, and since it is a facially neutral policy, we cannot see that there's intentional discrimination under Title IX. All of that is to say, I think if we go back and look at the actual facts pleaded in Ms. Murphy's second amended complaint regarding what she believes is official discrimination, we have allegations of no water breaks, no water being provided close by, no one calling a trainer, no one taking proper notice of the fact that she was struggling and hurting during the midst of these drills, and those are coaching decisions. Those are not official policy decisions by a school district with over 100,000 students. That is a decision by a single coach on a single day, and it's her own allegations make it clear that this is a single incident on a single day, and the record at 271, it says neither Chloe nor the team had ever completed an exercise like this before. At the record at 272, when the coach goes to visit her in the hospital to apologize, she states that she had no idea that this type of injury could occur. I think that probably leads us into the failure to train claim under Section 1983. The first argument Ms. Murphy puts forth in her brief is that she can proceed based on a custom or practice. Now, in doing that, she admits that the district, and her pleading also makes clear, the district absolutely has policies related to training and safety coaches and extracurricular activities, but she says, she also admits we don't have any similar incidents prior to this. This is a one-off. As far as we know, they had never done this exercise before, but she says there must have been a custom or practice of these issues, otherwise they wouldn't have adopted policies. Now, that's obviously circular logic with no limiting principle, because if you have policies, then it must be because you had an unconstitutional pattern or practice, and if you don't have policies, well, then we're going to proceed on the lack of policies. So I do think that's a non-starter. I think the court's precedent in this area is very clear. It's cited ad nauseum in my brief, the fact that you have to have prior similar incidents in order to rely on that custom pattern or practice. So that takes us to the very narrow single incident exception, first articulated in the city of Canton case and recently applied by this court in the Littell v. Houston ISD case. I think it's important to reiterate that this is a single incident exception, and it's supposed to be available only in narrow, very, and extreme circumstances. The entity must have failed completely to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face. In addition to that, the failure to train has to be complete, not deficient in a particular or narrow respect, and we get that from the Pena case from this court. And that's important because in any situation, a plaintiff could propose some training reform that would have prevented the particular injury causing conduct, even in a case like this where it is sort of an unexpected and catastrophic injury. The case law reserves this narrow exception for no training whatsoever on the relevant constitutional duty, and that's important. If we look at Ms. Murphy's pleadings, her second amended complaint is replete with allegations regarding the areas in which the district failed to train. And those allegations consistently refer to the need, the complete lack of training on the physiological differences between boys and girls. That's in the record at 261. That's in the record at 264. That's in the record at 265. In the record at 267, we have an allegation of no staff or coach training on the area of student safety and legislative concern that girls are more prone to injury from pryometric drills. In 268, we have the look back at what this narrow, extreme circumstances exception calls for, it calls for no training whatsoever on the relevant constitutional duty. If we look at the plaintiff's brief where she identified what she believes the constitutional duty is, I think that leads us to Judge Dennis' question and Judge Jones' question about how Moore v. Willis plays into this case. So Moore v. Willis, back from 2000, held that excessive exercise as punishment resulting in injury cannot sustain a constitutional violation under the Due Process Clause because Texas, the forum state, provides adequate criminal and civil penalties. In other words, the right to bodily integrity cannot be implicated by corporal punishment where the state, in this case Texas, provides remedies. So there's no allegations in the plaintiff's complaint as to a complete failure to train on that relevant constitutional duty, excessive force in exercise. But even if there were, she can't proceed on that claim because it's precluded by this court's holding in Moore v. Willis and its progeny. Finally, if we look back at the City of Canton single incident exception as interpreted by this court in Letel v. Houston, there's another part to that test that's important. It's that the constitutional, there needs to be complete failure of training as to a constitutional duty and it needs to be implicated in recurrent situations that a particular employee is certain to face. And it needs to be a situation where we can't expect that that employee is going to come to us with some sort of knowledge about how to avoid constitutional violations in that area. For example, in Letel, we had school administrators who allegedly had a constitutional search of students. But yet they were expected on occasion to search students when they were, for example, allegedly holding drugs. So they were doing these searches without any training on that situation. And the specifics of a constitutional search under the Fourth Amendment is not the type of thing that you would necessarily think that an educator comes to us with. In contrast, I would assert to you that we can expect that coaches are going to come to us with some sort of understanding that they should not force athletes to exercise until the point of catastrophic injury. And so I think it's very clear that that narrow available only in extreme and rare circumstances exception under Letel does not apply. There's a few cases since Letel, district court cases in the circuit that have applied those principles from Letel to the school district context and have held that it's not available in situations such as where a school employee has maybe sexually assaulted a student and another employee should have maybe done better supervision, etc. Because they found that it did not meet the specific circumstances of a clear constitutional duty recurrent situation that that employee was certain to face and to also not have some type of, come with some sort of constitutional common sense knowledge of how to implicate that. And so I would assert to you all that this case is much more like those cases and much less like Letel. It's not that we expect, and this brings us to Judge Douglas' question about the fact that the district has an official policy according to plaintiff's own allegations prohibiting using exercise as punishment. So it's not that we expected these employees to carefully use exercise as punishment. There's a clear prohibition on it. And so for that reason I would submit that this does not fit within the narrow extreme circumstances articulated by Letel. I just have one question that springs out of the 1983 suit. The infliction of punishment is constitutional as long as there is an adequate state remedy. What would the state remedy have been here? The state remedies, to my understanding, are the same that they would have been in Warren v. Willis, which is just that there are potential criminal penalties, you know, things such as assault, battery, et cetera, and also potential civil penalties under Texas civil law. What civil cause of action do you mean for making her overwork? Yes, Your Honor. I believe it would potentially be an assault claim, again, under the, or intentional infliction of emotional distress, et cetera, under Texas civil tort law. But they don't argue anyway. Those have not been asserted in this case, ma'am. Right. Your Honor. Well, I think we have your argument unless you have something else to cover. I was just going to say that for these reasons, we request that you all affirm the district court's order dismissing this case with prejudice, and I want to thank you all for your time and the opportunity this morning. Thank you. Okay, Mr. Sucneil. I kind of went over the Moore v. Willis issue again with counsel. It took me a while to kind of remember how we cited it and what purpose in our case. That case had to do with a separate claim under the 14th Amendment related to excessive punishment and kind of butted up against Fee v. Herndon. So that's why we dropped that claim, because obviously we could not keep it in this case. So that's kind of my response to the issue when you brought that up. It took me a while to let that percolate a little bit. The Arsenault case that she speaks to, probably to me one of the most important aspects of it, it was construed under a motion for summary judgment. In fact, in our brief on pages 22 through 24, in footnotes, we went through a litany of cases that were cited by the school district, and almost all of them have to do and occur during a motion for summary judgment, which goes back to Justice Dennis' issue about the evidence. In fact, that was one of the issues that the district judge made, we believe, and we wrote about that, is that he confused, I believe, respectfully, Judge Rodriguez, evidence and pleadings. Once again, right now, we're at the pleading stage. The other thing that I wanted to bring up again, Your Honor, to the panel, is the district judge's discussion about the acts and omissions by the cheerleading coach, and the pleadings were merely related to discrepancies in football a la cheerleading. We think that's a very, very important mistake and error, because the issue is the funding. If you don't fund boys and girls equally, as a matter of course, you're going to have differences in lots of different things. Now here, even if we agreed that the judges write about some things, that's merely discrepancy between football and cheerleading. Girls have a right to water. It has nothing at all to do with football. The boys' football field, they had water. The girls' cheerleading, they had no water. The boys had water breaks. The girls didn't have water breaks. The boys had trainers. The girls didn't have trainers. The girls were given excessive exercises that were not commensurate with their physical needs. There's no evidence, there's no pleadings, there's no discussion, there's no rebuttal from the school that the boys did not benefit from those things. There's no rebuttal from the school, or could there be at the pleading stage, that there wasn't equitable funding. Part of this case, and I started with this and I'm going to finish with this, of course, if you have questions, I'll be happy to answer them, is that once you have unequal funding, you're going to have unequal treatment. It's inevitable. And if you have unequal treatment, ultimately, you're going to have an injury. And we're here today to ask the panel to remand this case back to the district court and really send a message to schools all over Texas and Louisiana and Mississippi that we can't just give lip service to girls' sports, that we have to fund them equally and we have to make sure that they're served just like the boys are. Thank you so much. Okay. Go ahead. Can you speak to the Policino case that your friend on the other side mentioned? The Policino case that you said you were counseling, the case dealing with the ceiling jumps? Can you speak into the mic again? It's my fault. The Policino case, the case dealing with the ceiling jumps that your friend on the other side said you were counseling. Can you speak to that case? Do you recall that case? I'm sorry, Your Honor. I'm blanking on that at the minute. Okay. No problem. Forgive me. I'm sorry. Thank you. Okay. Thank you.